**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| **LESLIE TAYLOR**, an individual, and on behalf of herself and all other similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> **RIZZI GERIATRIC ASSOCIATES, INC., RIZZI PSYCHIATRIC ASSOCIATES, INC.** and **RIZZI GROUP, LLC**, <br><br> Defendant. | **CIVIL ACTION** <br><br> **Case No.  2:26-cv-1082** <br><br><br> **CLASS ACTION** |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, by and through undersigned counsel, and states the following for her Complaint:

## CAUSES OF ACTION

1. This is an action for unpaid overtime compensation, unlawful misclassification, unpaid wages, breach of contract, liquidated damages, and other relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. (hereinafter, the "Act" or "FLSA"), and Florida common law. Counts I and II are brought under the FLSA by Plaintiff individually and on behalf of

1

similarly situated plaintiffs. Counts III and IV are brought under Florida common law by Plaintiff individually and on behalf of a class of similarly situated plaintiffs.

## PARTIES

2. Plaintiff Leslie Taylor is an individual and resident of Florida who at all material times worked in Lee County, Florida and at all times had enterprise and individual coverage under the FLSA during her employment with Defendants. Plaintiff Taylor was employed by Defendants from April 2023 through January 10, 2024, as a mental health specialist. Plaintiff Taylor performed work for Defendants in Lee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. Plaintiff Taylor was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

3. Defendants Rizzi Geriatric Associates, Inc., Rizzi Psychiatric Associates, Inc., and The Rizzi Group are Florida corporations that constitute either joint employers or a single integrated enterprise under the FLSA. These entities are highly integrated with respect to ownership and operations, as they share: (1) interrelated operations - all three entities work together to provide geriatric and psychiatric medical services at assisted living facilities and nursing homes throughout Southwest Florida under a unified business model; (2) common management - the entities share common officers and directors, including Dr. Gabriel Rizzi and Terese Rizzi, who exercise control across all three entities;

(3) centralized control of labor relations - all hiring, firing, work assignments, compensation decisions, and employment policies for mental health specialists and healthcare providers are made centrally across all three entities by the same management team, including shared practice manager Elizabeth Larson; and (4) common ownership - the entities are under common ownership and control of the Rizzi family. The entities have gross annual income well in excess of $500,000.00 per year and are engaged in interstate commerce. As joint employers or a single integrated enterprise, Defendants are covered employers under the FLSA (29 U.S.C. §203(d), (r) and (s)) and collectively have the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like Plaintiff. Defendants supervised and controlled Plaintiff's work schedules and conditions of employment and maintain employment records of Plaintiff across all three corporate entities.

## **JURISDICTION AND VENUE**

4. This Court has jurisdiction of this matter under 28 U.S.C. §1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§216(b) and 217. The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the FLSA. An opt-in Collective Action is sought under FLSA §216(b).

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in the United States District Court for the Middle District of Florida because Plaintiff worked in, and Defendants conduct business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida.

**GENERAL ALLEGATIONS**

7. Defendants operate medical practices providing geriatric and psychiatric care services at various assisted living facilities and nursing homes throughout Southwest Florida and employed Plaintiff as a mental health specialist.

8. All mental health specialists and similar healthcare providers employed by Defendants, including Plaintiff, were paid under compensation structures controlled by Defendants despite being misclassified as independent contractors. For example, Plaintiff Taylor was paid under a "50/50 split" arrangement that was controlled and dictated by Defendants.

9. Throughout her employment, Plaintiff was required to work through schedules mandated by Defendants. Defendants exercised complete control over both the hours worked and the compensation arrangements for all mental health specialists and healthcare providers, including Plaintiff.

4

10.     All mental health specialists and healthcare providers employed by Defendants, including Plaintiff, were paid under compensation arrangements that were controlled and dictated by Defendants, regardless of how the compensation was characterized in their agreements. This compensation structure, combined with Defendants' complete control over work schedules, demonstrates the true employer-employee relationship that Defendants attempted to disguise through "independent contractor" agreements.

11.     Throughout her employment, Plaintiff was classified by Defendants as an "independent contractor" and paid on a 1099 basis, despite being subject to Defendants' control and direction in all material aspects of her work, including her compensation arrangements, mandatory work schedules and mandatory work assignments.

12.     Defendants exercised significant control over Plaintiff's work schedules and compensation, including requiring adherence to specific schedules and policies, mandating completion of documentation on specific timelines with threats to withhold payments for non-compliance, controlling billing and collection processes, requiring pre-approval for time off, and demanding exclusive devotion of time to the Practice's business.

13.     Despite this level of control over compensation and work schedules, Defendants misclassified Plaintiff as an independent contractor to

avoid paying overtime compensation, employment taxes, and benefits required for employees under federal and state law.

14.     As a result of working more than 40 hours per week while being paid under compensation arrangements set by Defendants but being misclassified as an independent contractor, Plaintiff and similarly situated mental health specialists and healthcare providers were denied overtime compensation at the rate of one and one-half times their regular rate of pay as required by the FLSA.

15.     Defendants' practice of withholding payments, maintaining control over billing systems, and exercising control over work schedules further demonstrates the employer-employee relationship and constitutes additional wage violations.

16.     As a direct result of Defendants' willful misclassification of mental health specialists and healthcare providers, Plaintiff and similarly situated individuals were rendered ineligible for unemployment insurance benefits. When workers are improperly classified as independent contractors rather than employees, they are denied access to the unemployment insurance system, which is funded by employer contributions and available only to workers properly classified as employees. This misclassification deprived Plaintiff of this critical safety net protection in the event of job loss, forcing her

6

to bear the full financial burden of unemployment without access to these earned benefits.

17.    In addition to misclassifying Plaintiff as an independent contractor to avoid paying overtime, Defendants also breached the written Independent Contractor Agreements by deducting unauthorized fees and charges from Plaintiff's compensation. Specifically, from the time Plaintiff began working for Defendants until approximately April 2025, Defendants deducted a 7% (later reduced to 6%) administrative fee and approximately $200 per month (later reduced to $199 per month) for electronic medical records/practice management software charges from Plaintiff's compensation, even though these deductions were not authorized by the Independent Contractor Agreements in effect during that time period.

18.    The Independent Contractor Agreement executed by Plaintiff Taylor upon her hiring in April 2023 provided only for compensation calculated as a percentage of net collected revenue or fee-for-service arrangements. This agreement did not authorize Defendants to deduct any administrative fees or electronic medical records charges from the agreed-upon compensation.

19.    Only in or around April 2025 did Defendants modify their Independent Contractor Agreements to expressly include authorization for a 6% administrative fee and $199 monthly electronic health records charge. However, Defendants had been deducting these fees from Plaintiff's

7

compensation from April 2023 through January 10, 2024, before obtaining contractual authorization to do so.

20.      By deducting the 7%/6% administrative fee and approximately $200/$199 monthly electronic medical records charges from Plaintiff's compensation without contractual authorization, Defendants breached the Independent Contractor Agreements and are liable to Plaintiff for the unauthorized deductions plus interest.

21.      All mental health specialists and healthcare providers employed by Defendants under Independent Contractor Agreements from approximately 2022 through April 2025 were subject to the same unauthorized deductions, as Defendants used identical or substantially similar Independent Contractor Agreement forms for all mental health specialists and healthcare providers during this time period.

## COUNT I: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FLSA

22.      Plaintiff reincorporates and re-alleges paragraphs 1 through 21 as though set forth fully herein.

23.      At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e).

8

24.     Defendants willfully misclassified Plaintiff as an independent contractor when she was actually an employee paid at rates controlled by Defendants and subject to Defendants' control and direction.

25.     Plaintiff regularly worked in excess of 40 hours per week under compensation arrangements set by Defendants. Plaintiff was required to work full-time schedules at rates established by Defendants, but was not paid overtime compensation at the rate of one and one-half times her regular rate of pay as required by 29 U.S.C. § 207(a).

26.     Based on Defendants' control over the compensation structures and the actual hours worked, Plaintiff is entitled to substantial overtime compensation for all hours worked in excess of 40 per week during her period of employment at the overtime rate of one and one-half times her regular rate.

27.     As a direct and proximate result of the foregoing, Plaintiff has been damaged and is entitled to unpaid overtime wages, liquidated damages, and attorneys' fees.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants as follows:

a. Award to Plaintiff payment of all unpaid overtime wages;

b. Award to Plaintiff liquidated damages equal to the unpaid overtime wages;

c. Award to Plaintiff reasonable attorneys' fees and costs; and

9

d. Award such other and further relief as this Court may deem just and proper.

## COUNT II: COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

28. Plaintiff hereby incorporates Paragraphs 1-27 in this Count as though fully set forth herein and brings this Count on behalf of herself and all others similarly situated.

29. This claim for relief based on FLSA violations is brought by Plaintiff in her own right and as a collective action under 29 U.S.C. § 216(b) for claims under the FLSA asserted on behalf of all other similarly situated persons, to wit: all mental health specialists, nurse practitioners, and similar healthcare providers who were classified as independent contractors but were actually employees who worked more than 40 hours per week without receiving overtime compensation during the applicable statute of limitations period ("FLSA Collective Action").

30. Defendants' policies identified above applied uniformly across their operations throughout Southwest Florida, with all mental health specialists and healthcare providers being paid under compensation arrangements controlled by Defendants while being misclassified as independent contractors.

31.     Plaintiff and potential opt-in plaintiffs are similarly situated as they were all subject to the same misclassification scheme and denied overtime compensation despite working in excess of 40 hours per week under compensation arrangements established and controlled by Defendants.

32.     By filing this action, Plaintiff consents to sue with respect to each FLSA claim for relief against Defendants pursuant to 216(b) of the FLSA.

WHEREFORE, Plaintiff, on behalf of herself and all putative members of the proposed Collective Action, prays for relief as follows:

a. Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. 216(b);

b. An award of unpaid overtime wages and liquidated damages;

c. Reasonable attorney's fees and costs; and

d. Such other relief as this Court deems necessary and proper.

## COUNT III: BREACH OF CONTRACT

33.     Plaintiff hereby incorporates Paragraphs 1-3, 7-13 and 17-21 in this Count as though fully set forth herein and brings this Count on behalf of herself and all others similarly situated under Florida common law.

34.     Plaintiff Taylor entered into a written Independent Contractor Agreement with Defendants that governed the terms and conditions of her work and established her compensation structure.

35.     The Independent Contractor Agreement executed by Plaintiff provided for compensation calculated as a percentage of net collected revenue. Plaintiff Taylor's Agreement provided for compensation of 50% of net collected revenue.

36.     The Independent Contractor Agreement in effect from April 2023 through January 10, 2024 did not authorize Defendants to deduct any administrative fees or electronic medical records charges from the agreed-upon compensation.

37.     Notwithstanding the absence of contractual authorization, beginning in or around April 2023 and continuing through January 10, 2024, Defendants unilaterally deducted a 7% (later modified to 6%) administrative fee from each biweekly payment made to Plaintiff.

38.     Additionally, during this same time period, Defendants unilaterally deducted approximately $200 per month (later modified to $199 per month) from Plaintiff's compensation for electronic medical records or practice management software charges (referred to variously as "Practice Fusion," "EHR license," or "EMR charges").

39.     These deductions were made systematically from every payment to Plaintiff during her employment, resulting in substantial unauthorized reductions in Plaintiff's contractually agreed-upon compensation.

40. Only in or around April 2025, after Plaintiff had already been terminated and after years of making these unauthorized deductions to other similarly situated individuals, did Defendants modify their Independent Contractor Agreement forms to include express authorization for a 6% administrative fee and $199 monthly EHR charge. However, this retroactive attempt to obtain authorization does not cure the breach of contract that occurred during Plaintiff's employment from April 2023 through January 10, 2024.

41. By deducting fees and charges that were not authorized by the parties' written agreement, Defendants materially breached the Independent Contractor Agreement with Plaintiff.

42. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in amounts to be proven at trial, consisting of all unauthorized deductions made from her compensation from April 2023 through January 10, 2024, plus pre-judgment interest.

43. Pursuant to the attorney's fees provisions contained in the Independent Contractor Agreement, the prevailing party in any litigation arising out of or related to the Agreement is entitled to recover all costs, expenses, and reasonable attorney fees through all proceedings, trials, and appeals. Plaintiff is therefore entitled to recover her attorneys' fees and costs incurred in prosecuting this breach of contract claim.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants as follows:

a. Award to Plaintiff payment of all unauthorized deductions made from her compensation;

b. Award to Plaintiff pre-judgment and post-judgment interest as provided by Florida law;

c. Award to Plaintiff reasonable attorneys' fees and costs pursuant to the contractual attorney's fees provision; and

d. Award such other and further relief as this Court may deem just and proper.

## COUNT IV: CLASS ACTION ALLEGATIONS FOR BREACH OF CONTRACT

44.     Plaintiff hereby incorporates Paragraphs 1-3, 7-13, 17-21 and 33-43 in this Count as though fully set forth herein and brings this Count on behalf of herself and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23.

45.     Plaintiff brings this breach of contract claim as a class action on behalf of herself and all other similarly situated persons, defined as follows:

"All mental health specialists, nurse practitioners, and similar healthcare providers who entered into Independent Contractor Agreements with Defendants from April 2022 through April 2025 and from whose compensation

Defendants deducted administrative fees and/or electronic medical records charges that were not authorized by the Independent Contractor Agreements in effect at the time the deductions were made" ("Breach of Contract Class").

46. The members of the proposed Breach of Contract Class are so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed approximately 20-30 or more mental health specialists, nurse practitioners, and healthcare providers during the relevant time period who were subject to the same unauthorized deductions.

47. There are questions of law and fact common to the Breach of Contract Class, including:

a. Whether the Independent Contractor Agreements in effect from approximately 2022 through March 2025 authorized Defendants to deduct administrative fees from mental health specialists' and healthcare providers' compensation;

b. Whether the Independent Contractor Agreements in effect from approximately 2022 through March 2025 authorized Defendants to deduct electronic medical records charges from mental health specialists' and healthcare providers' compensation;

c. Whether Defendants breached the Independent Contractor Agreements by making these unauthorized deductions;

15

d. The amount of damages sustained by Class members as a result of the unauthorized deductions;

e. Whether Class members are entitled to pre-judgment interest on the unauthorized deductions; and

f. Whether Class members are entitled to attorneys' fees and costs pursuant to the contractual attorney's fees provision.

48. Plaintiff's claims are typical of the claims of the Breach of Contract Class members. All Class members, including Plaintiff, entered into substantially identical Independent Contractor Agreements with Defendants that did not authorize administrative fees or electronic medical records charges, yet had such fees deducted from their compensation by Defendants.

49. Plaintiff will fairly and adequately protect the interests of the Breach of Contract Class. Plaintiff has no interests antagonistic to the interests of other Class members. Plaintiff is represented by counsel experienced in class action litigation and employment law.

50. Common questions of law and fact predominate over any questions affecting only individual Class members. The central issues in this case—whether the contracts authorized the deductions and whether Defendants breached the contracts by making unauthorized deductions—are common to all Class members and can be resolved on a class-wide basis.

51.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The amounts at issue for individual Class members, while substantial, may not justify the expense of individual litigation. Class treatment will allow numerous similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Given that all Class members were subject to identical or substantially similar Independent Contractor Agreements and the same unauthorized deduction practices, common issues predominate and class treatment is the superior method for adjudicating these claims.

52.    By filing this action, Plaintiff seeks certification of the Breach of Contract Class pursuant to Federal Rule of Civil Procedure 23(b)(3).

WHEREFORE, Plaintiff, on behalf of herself and all putative members of the proposed Breach of Contract Class, prays for relief as follows:

a. Certification of the Breach of Contract Class pursuant to Federal Rule of Civil Procedure 23(b)(3);

b. Appointment of Plaintiff as Class Representative;

c. Appointment of undersigned counsel as Class Counsel;

d. An award of damages for all unauthorized deductions made from Class members' compensation;

17

e. An award of pre-judgment and post-judgment interest as provided by Florida law;

f. Reasonable attorney's fees and costs pursuant to the contractual attorney's fees provision; and

g. Such other relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: April 8, 2026

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff(s)
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com